13-1000-cv
Kanciper v. Suffolk County SPCA, Inc. *et al*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: June 18, 2013          Decided: July 8, 2013)

Docket No. 13-1000-cv

─────────────────────────────

MONA T. KANCIPER,

*Plaintiff- Appellant,*

– v. –

SUFFOLK COUNTY SOCIETY FOR THE PREVENTION OF CRUELTY TO
ANIMALS, INCORPORATED; ROY GROSS; GERALD LAUBER; SHAWN A.
DUNN; MICHAEL NORKELUN; JOHN AND JANE DOES 1-10,

*Defendants-Appellees,*

─────────────────────────────

Before: CALABRESI, CABRANES and B.D. PARKER, *Circuit Judges.*

Mona Kanciper appeals from the District Court's dismissal of her complaint, in which she sought both a declaratory judgment that N.Y. Crim. Proc. Law § 2.10(7) is unconstitutional and damages pursuant to 42 U.S.C. § 1983, stemming from a search of her property by agents of the Suffolk County Society for the Prevention of Cruelty to Animals, Inc. ("SPCA"). We conclude that the District Court's decision to dismiss her § 1983 claims under claim splitting principles was erroneous, and its decision to apply *Wilton/Brillhart* abstention to dismiss her claim for declaratory relief was error. We therefore VACATE the judgment and REMAND the case to the District Court for further proceedings consistent with this decision.

ALAN E. SASH (Steven J. Hyman, *on the brief*), McLaughlin & Stern, LLP, New York, N.Y., *for Plaintiff-Appellant.*

JOSEPH SALVO (Ryan Sestack, *on the brief*), Gordon & Rees, LLP, New York, N.Y., *for Defendants-Appellees.*

─────────────────────────────

1

CALABRESI, *Circuit Judge*:

Mona Kanciper appeals from the District Court's February 23, 2013 Memorandum of Decision and Order, dismissing her complaint, which sought: (1) a declaration that N.Y. Crim. Proc. Law § 2.10(7)—allowing Societies for the Prevention of Cruelty to Animals to grant their employees "peace officer status," and thereby empowering them with various governmental investigatory and enforcement functions—is unconstitutional under the United States Constitution;[1] and (2) damages pursuant to 42 U.S.C. § 1983, stemming from a search of her property and her arrest by agents of the Suffolk County Society for the Prevention of Cruelty to Animals, Inc. ("SPCA").

Because Kanciper filed a suit for tort damages based on the same facts in state court, the District Court (Spatt, *J.*) applied claim splitting principles[2] to dismiss Kanciper's § 1983 action. Although district courts have some authority to manage their dockets by declining to entertain claims that a plaintiff could have brought in another pending federal case, we conclude that the District Court's decision to dismiss a federal claim because of a similar pending *state* court litigation was in error. In these situations, the Supreme Court's *Colorado River* abstention standard applies to ensure that federal courts do not abdicate "the virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

---

[1] Kanciper's complaint also asserted that N.Y. Crim. Proc. Law § 2.10(7) violates N.Y. Exec. Law §§ 30 and 31. She does not raise that claim to us. She also asserted that the statute is unconstitutional under the New York State Constitution, but she does not appeal the dismissal of that claim.

[2] Wright & Miller describe claim splitting as follows:

> In dealing with simultaneous actions on related theories, courts at times express principles of "claim splitting" that are similar to claim preclusion . . . . A dismissal on this ground has been viewed as a matter of docket management . . . even in decisions that with some exaggeration describe the theory "as an aspect of res judicata."

18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4406.

The District Court relied on *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), in deciding to abstain from hearing Kanciper's claim for declaratory relief. Because *Brillhart/Wilton* abstention cannot apply when, as in this case, a plaintiff seeks damages in addition to declaratory relief, we hold that the District Court erred (or, in the awkward locution traditionally adopted by this Court, "abused its discretion") in dismissing Kanciper's declaratory judgment claim.

We therefore VACATE the judgment and REMAND the case to the District Court for further proceedings consistent with this decision.

## I. BACKGROUND

### A. Facts

Kanciper owns and lives on a horse farm in Manorville, New York. She is the President of The New York Horse Rescue Corporation, a non-profit organization located at her horse farm that rescues unwanted and abandoned horses. Kanciper asserts that, since 1998, her horse farm has rescued more than 1,500 horses.

In August 2009, the SPCA received a complaint about "equine abuse" at the Kanciper horse farm. In response, the SPCA sent a person it refers to as a detective, Shawn Dunn, to investigate the situation. After Dunn had visited the horse farm twice, and allegedly threatened Kanciper and her ailing husband with prosecution and the loss of her husband's veterinary license, the case against Kanciper was closed for lack of probable cause.

3

On December 23, 2009, the SPCA received another complaint about horse abuse at the Kanciper horse farm. Kanciper alleges that another SPCA detective, Michael Norkelun, walked around the horse farm with her and reported to the SPCA that she "show[ed] [him] several horses inside a large barn that appeared healthy."

Despite this report, Norkelun visited the complainant's home a few days later to collect written statements. Then, on March 18, 2010, based only on the complainant's statements (and no additional corroboration), Norkelun allegedly applied for a warrant to search Kanciper's horse farm. Norkelun and other members of the SPCA executed the search warrant on March 20, 2010. Kanciper asserts that during the search (1) large machinery was used to dig up portions of her property without her consent, (2) she was restrained despite the absence of an arrest warrant, (3) she was interrogated despite her request to speak with counsel, and (4) she was not read her *Miranda* rights until late in the day.

Kanciper was indicted in July 2010 on three counts of animal cruelty—solely with regard to the treatment of dogs (not horses)—and two counts of endangering a minor. On October 13, 2011, Kanciper was found guilty on one count of endangering a minor; all the other counts were dismissed. Her one conviction was based on the fact that she had injected a dog with a tranquilizer in front of a ten-year-old child. On November 14, 2012, the New York Appellate Division reversed Kanciper's conviction, concluding that the evidence presented did not establish that witnessing a dog being injected with a tranquilizer was likely to harm the physical, mental, or moral welfare of a child.

4

## B. Procedural History

On February 4, 2011, during the pendency of her criminal case, Kanciper filed a civil suit in New York state court against the SPCA and other individuals, seeking damages based on various tort theories, including: abuse of process, fraud and misrepresentation, tortious interference, intentional infliction of emotional distress, and defamation. *See* App'x 66-96. Almost a year later, Kanciper also initiated an Article 78 Petition, in which she sought a declaratory judgment that the SPCA was a "public entity" and therefore subject to New York's Freedom of Information Law. *See* App'x 169-211. Kanciper's state court action and Article 78 Petition apparently are still pending.

On April 30, 2012, Kanciper filed this action against the SPCA and other individuals (jointly, "Defendants") in the United States District Court for the Eastern District of New York. Defendants filed a motion to dismiss the suit on *Pullman*, *Burford*, and *Younger* abstention grounds, as well as on a theory of claim splitting. Although the District Court concluded that it was not appropriate to abstain pursuant to *Pullman*, *Burford*, or *Younger*, it dismissed Kanciper's § 1983 claims on the claim splitting theory. Relying on the Tenth Circuit's decision in *Katz v. Gerardi*, 655 F.3d 1212 (10th Cir. 2011), the District Court disregarded the fact that both cases remained pending. Instead, the District Court focused on whether – assuming (hypothetically) that Kanciper's state court action had been adjudicated – the state court judgment would be preclusive in the federal action. The District Court concluded that it would, and that dismissing Kanciper's § 1983 claim was appropriate; the court noted that (1) her § 1983 claim and her state court claims arose from a common set of facts, and (2) she could have (and should have) brought her § 1983 claims in state court together with her state law claims.

5

The District Court then dismissed Kanciper's declaratory judgment claims *sua sponte* under the *Brillhart/Wilton* abstention doctrine. *See Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("To avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions 'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" (quoting *Wilton*, 515 U.S. at 282)).

## II.  DISCUSSION

This appeal requires us to determine whether the District Court erred (1) by dismissing Kanciper's § 1983 claim on a claim splitting theory, and (2) by dismissing Kanciper's declaratory judgment claims under the *Brillhart/Wilton* abstention doctrine. We consider each issue in turn.

### A. Standards of Review

The parties disagree about the correct standard of review which we should apply to the District Court's dismissal of Kanciper's § 1983 claim. Kanciper argues that we should review the District Court's decision *de novo* because claim splitting was not a theory of dismissal available to the District Court in these circumstances; she argues that the District Court should have instead considered Defendant's arguments regarding her allegedly duplicative state and federal actions under the *Colorado River* abstention doctrine. Reply Br. 2-3; *see Colo. River*, 424 U.S. 800; *see also Niagra Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84 (2d Cir. 2012); *Gregory v. Daly*, 243 F.3d 687, 702 (2d Cir. 2001) ("*Colorado River* . . . and its progeny . . . set forth the standards governing abstention when 'state and federal courts exercise concurrent jurisdiction simultaneously.'" (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999))). Defendants disagree and

6

contend that we should only review the District Court's claim splitting decision for abuse of discretion because the decision related to the District Court's management of its own docket. *See* SPCA Br. 2 (citing, *inter alia*, *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002)).

As the question presented in this appeal is whether or not claim splitting is even applicable in these circumstances, we agree with Kanciper that the question presents an issue of law that we review *de novo*. *See Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 44 (1st Cir. 2012) ("In our view, the first issue of whether claim preclusion is available at all in this context presents an issue of law subject to de novo review."); *see also Am. Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013) ("As this appeal turns on a pure question of law, our review is *de novo*.").

Whether the District Court properly abstained under the *Brillhart/Wilton* doctrine is reviewed for abuse of discretion. *See Niagra Mohawk Power Corp.*, 673 F.3d at 99 ("We review a district court's abstention decision for abuse of discretion."). Although abuse of discretion is normally a deferential standard, it is "somewhat rigorous" in the abstention context "because we are considering an exception to a court's normal duty to adjudicate a controversy properly before it." *Dittmer*, 146 F.3d, at 116 (internal quotation marks and brackets omitted).

**B. Claim splitting**

In dismissing Kanciper's § 1983 claim on a claim splitting theory, the District Court relied principally on the Tenth Circuit's decision in *Katz v. Gerardi*, 655 F.3d 1212 (10th Cir. 2011). *Katz* upheld a district court's claim splitting theory dismissal when the plaintiff had previously filed related claims that were pending in the same federal court against the same

defendants. *Id.* at 1217-19. The Tenth Circuit noted that "[t]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit," and it justified this standard by referring to the fact "that the claim splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation." *Id.* at 1218-19.[3]

The District Court's reliance on *Katz* (and, indeed, on claim splitting generally) was erroneous, however, because the previously filed case in this litigation was not filed "*in the same [federal] district court*" but in a different *state* court. *Id.* at 1219 (pointing out that the plaintiff in *Katz* "ha[d] filed two cases in the same district court, involving the same subject matter, seeking the same claims for relief against the same defendants."). Indeed, while plaintiffs "generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), "*as between state and federal courts*, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," *Colo. River.*, 424 U.S. at 817 (emphasis supplied) (internal quotation marks omitted).

These different approaches, "involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts," are well established. *Id.* As the Supreme Court has noted, "[t]his difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the

---

[3] The Tenth Circuit also stated its view regarding the differences between claim splitting and res judicata: "To be sure, claim splitting and res judicata both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation. But claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." *Katz*, 655 F.3d at 1218.

virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. Given this obligation . . . the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration *are considerably more limited than the circumstances appropriate for abstention*." *Id.* at 817-18 (emphasis supplied).

Although we have not specifically referred to "claim splitting" in applying these principles, we stated in *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000), that a district court's authority to stay or dismiss a suit "as part of its general power to administer its docket" arises in situations where the second suit "is duplicative of *another federal court suit*." *Id.* at 138 (emphasis supplied). We also noted:

> Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. Of course, simple dismissal of the second suit is another common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.

*Id.* at 138-39 (citations omitted). District courts in this Circuit have stated this principle more specifically in the claim splitting context. *See, e.g.*, *Steinberg v. Nationwide Mut. Ins. Co.*, 418 F. Supp. 2d 215, 233 (E.D.N.Y. 2006) ("[C]laim-splitting does not apply to parallel state and federal actions."); *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 421 (N.D.N.Y. 2005) ("[I]f claim splitting is involved, simple dismissal is . . . appropriate because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." (internal quotation marks and brackets omitted)).

In sum, because the "contemporaneous exercise of concurrent jurisdictions" in this case was between a state court and a federal court, *Colo. River*, 424 U.S. at 817, claim

9

splitting was not a theory under which the District Court could dismiss Kanciper's § 1983 claim.[4]  Moreover, in light of "[t]his difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction," *id.*, we agree with Kanciper that *Colorado River* sets out the appropriate standard under which to examine whether or not to dismiss (or stay) her allegedly duplicative federal claims.  *See Niagra Mohawk Power Corp.*, 673 F.3d at 100 ("In *Colorado River*, the Supreme Court held that, in addition to the earlier-established categories of abstention, in certain other exceptional circumstances, a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in [the] comprehensive disposition of litigation and abstention would conserve judicial resources." (internal quotations marks and citations omitted)).  We do not consider, however, whether *Colorado River* abstention is appropriate in this case under the six-factor test used in this Circuit. *See id.* at 100-01.  If Defendants pursue that issue on remand, the District Court will be able to consider it at that time.

## C. *Brillhart/Wilton* Abstention

Because the District Court erred in dismissing Kanciper's § 1983 claim, it necessarily erred or "abused its discretion" in dismissing her declaratory judgment claims under the *Brillhart/Wilton* abstention doctrine. We have stated before, and we now hold, that "*Wilton* does not apply where, as here, a plaintiff does not seek purely declaratory relief, but also . . . seeks damages caused by the defendant's conduct." *Id.* at 106 (internal quotation marks and

[4]  Since we conclude that the District Court erroneously dismissed Kanciper's § 1983 claim on the ground that claim splitting does not apply to parallel state and federal court actions, we need not consider Kanciper's argument that claim splitting was unavailable here because the parallel state court action remains pending.

brackets omitted).[5]  Accordingly, as with the § 1983 claim, we vacate the District Court's order dismissing Kanciper's declaratory judgment claim and remand the case to the District Court.

## III.    CONCLUSION

We VACATE the District Court's February 23, 2013 order, which dismissed Kanciper's § 1983 and declaratory judgment claims, and we REMAND the case to the District Court for further proceedings consistent with this decision.

---

[5] Kanciper also argues that *Brillhart/Wilton* abstention was improper because her suit raises important issues of federal, rather than state, law. There is support for that position, *see Youell v. Exxon Corp.*, 74 F.3d 373, 374 (2d Cir. 1996), but because we resolve the case on other grounds, we need not reach that contention.